**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

Imad Y. Elias
**LAW OFFICE OF MANN & ELIAS**
3333 Michelson, Suite 300
Irvine, CA 92612
(949) 655-4235 (office)
(323) 857-9525 (fax)
*imad @mannelias.com*

Chunsoo "Terence" Park
Jason T. Brown
Patrick S. Almonrode
    (*pro hac vice* applications forthcoming)
**BROWN, LLC**
111 Town Square Place, Suite 400
Jersey City, NJ 07310
(877) 561-0000 (office)
*terence.park@jtblawgroup.com*
*jtb@jtblawgroup.com*
*patalmonrode@jtblawgroup.com*

*Counsel for Relator*

**PAID**

FILED
CLERK, U.S. DISTRICT COURT

SEP – 5 2023

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES and the STATE OF CALIFORNIA ex rel. Matt Lieberman and James Whitney, <br><br> Plaintiffs, <br><br> v. <br><br> MODERN NUCLEAR, INC., and ABC CORPORATIONS 1-50, <br><br> Defendants. | Case No.: 8:23-cv-01646-DOC-(KESx) <br><br> Complaint and Demand for Jury Trial for Violation of: <br><br> 1. 31 U.S.C. §§ 3729(A), (B), and (C) <br><br> 2. Cal. Ins. Code § 1871.7(a) and (b). <br><br> FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2) |

1

Case 8:23-cv-01646-DOC-KES    Document 1    Filed 09/05/23    Page 2 of 18    Page ID
#:246

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

Plaintiffs and *qui tam* Relators Matt Lieberman and James Whitney, by and through their undersigned counsel, Brown, LLC, allege of personal knowledge as to their own observations and actions, and on information and belief as to all else, as follows:

# I.
# PRELIMINARY STATEMENT

1. Defendant Modern Nuclear, Inc. is a provider of mobile imaging services that "loans" its equipment and staff to physician practices throughout central California.

2. Modern Nuclear bills its imaging services directly to insurance carriers, including Medicare and other federal health insurance programs, as well as commercial insurers operating in California.

3. As an inducement for physicians to use Defendant's services and refer patients to them, Defendant offers the physicians up to $1,000 for each patient the physicians refer to Modern Nuclear for imaging.

4. These payments to the doctors are kickbacks – they are directly proportional to the number of patients the physicians refer to Modern Nuclear, and far exceed the fair market value of any professional or supervisory services or facility rentals provided by the physician practices.

5. All reimbursement claims that Defendant submits to insurance carriers are tainted by this kickback scheme. Accordingly, Defendant's submission of kickback-tainted claims to Medicare violates the Anti-Kickback Statute, 42 U.S. Code § 1320a–7b ("AKS"), and thereby violates the federal False Claims Act, 31 U.S.C. §§ 3729 et seq. (the "FCA").

6. Procuring patients through kickbacks to obtain insurance proceeds also violates the California Insurance Fraud Prevention Act, Cal. Ins. Code § 1871 *et seq.* (the "CIFPA").

7. Relators bring this action under the *qui tam* provisions of the FCA and CIFPA, to recover damages and penalties owed to the United States and the State of California because of Defendant's unlawful kickback scheme.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

8.     This Complaint is filed in camera and under seal pursuant to 31 U.S.C. § 3730(b)(2). A copy of this Complaint, along with written disclosure of substantially all material evidence and information that Relator possesses, will be served on the Attorney General of the United States and the United States Attorney for the Central District of California, pursuant to 31 U.S.C. § 3730(b)(2); and on the Orange County District Attorney and the California Insurance Commissioner pursuant to Cal. Ins. Code § 1871.7(e)(2).

## II.
## JURISDICTION AND VENUE

9.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331, because this action is brought for violations of the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, a federal statute. This Court has jurisdiction over the CIFPA claims pursuant to 31 U.S.C. § 3732(b).

10.    The Court has personal jurisdiction over Defendant because Defendant (a) resides in, and transacts business in, this District; and (b) has carried out its fraudulent scheme in this District.

11.    Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b)(2), because Defendant can be found in, and transacts or has transacted business in, this District, and the events and omissions that give rise to these claims have occurred in this District.

12.    This Complaint was filed within the periods prescribed by 31 U.S.C. § 3731(b) and Cal. Ins. Code § 1871.7(l).

## III.
### NO PUBLIC DISCLOSURE;
### DIRECT AND INDEPENDENT KNOWLEDGE
### OF VIOLATIONS OF THE FALSE CLAIMS ACT

13.    There has been no public disclosure, relevant under 31 U.S.C. § 3730(e) and Cal. Ins. Code § 1871.7(h)(2), of the "allegations or transactions" in this Complaint.

3

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

Alternatively, to the extent that any such public disclosure has been made, Relators possess information that is independent of and materially adds to any allegations that may have been publicly disclosed.

14. Relators make the allegations in this Complaint based on their own knowledge, experience and observations. Relators are the original sources of the information on which the allegations herein are based, have direct and independent knowledge of such information, and will voluntarily disclose such information to the United States and the State of California.

## IV.
## THE PARTIES

### A.   Plaintiffs

15. Relators bring this action on behalf of Plaintiff the United States. At all times relevant to this Complaint, the United States, acting through the Centers for Medicare & Medicaid Services ("CMS"), has reimbursed Defendant for the provision of medical services through the Medicare program. Furthermore, the United States, acting through the Department of Defense and the Department of Veterans, has reimbursed Defendant through the TRICARE and CHAMPVA programs.

16. Relators also bring this action on behalf of Plaintiff the State of California under the CIFPA for fraud upon private insurers in California who reimbursed Defendant for kickback-tainted services.

17. Relator Matt Lieberman resides in McGregor, Texas.

18. Relator James Whitney resides in Orange County, California.

### B.   Defendants

19. Defendant Modern Nuclear, Inc. is a domestic corporation with a principal business address of 511 South Harbor Boulevard East, La Habra, CA 90631. Modern Nuclear is enrolled with Medicare as an independent diagnostic testing facility (IDTF).

4

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

20. Defendants ABC Corporations 1-50 are physician practices that have referred patients to Modern Nuclear in exchange for kickbacks. Defendants ABC Corporations 1-50's true names and capacities are currently unknown to Relators. Relators will amend this Complaint to show such true names and capacities when the same have been ascertained.

## V.
## DEFENDANTS' FRAUD

21. Defendant Modern Nuclear is a provider of mobile imaging services, including positron emission tomography (PET) and computerized tomography (CT) scans.

22. Modern Nuclear owns a fleet of vans and trailers fitted with imaging equipment, and employs nuclear medicine technologists and other non-physician staff needed to perform the imaging tests.

23. Modern Nuclear enters into agreements with physician practices (named as Defendants ABC Corporations 1-50), under which Modern Nuclear provides imaging for patients referred by the physician practices.

24. On certain scheduled days, Modern Nuclear will park one of its vans or trailers containing imaging equipment outside a physician office, which supplies the patients in need of imaging services, including PET and CT scans.

25. Modern Nuclear provides all equipment and staff required to perform the imaging tests.

26. Modern Nuclear then bills Medicare and other federal and private insurance plans for these tests, charging thousands of dollars to each patient's insurance.

27. As an example, in 2021, Modern Nuclear billed Medicare for more than 4,000 imaging tests and related services, and Medicare reimbursed Modern Nuclear more than $7 million for those claims.

28. However, the patients were obtained through the payment of unlawful kickbacks.

5

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

29.   Modern Nuclear's reimbursement outline provided to each physician practice states: "For PET/CT days, the collated payment from Modern Nuclear to the practice would end up being ~$900 per [patient or hour] or ~$1,000 per [patient or hour] if the physicians are reading their own studies."

30.   The payments are purportedly for "services such as direct supervision, usage of the waiting room, parking lot and other facilities, etc."[1]

31.   Because Modern Nuclear typically performs up to 12 PET/CT scans per day at each physician's office, a physician can expect a payment of up to $12,000 per "PET/CT day."

32.   This amount far exceeds the fair market value of any professional or supervision services provided by the physicians and facility rental fees for just one day.

33.   The physicians thus make tens of thousands of dollars for doing virtually nothing but referring their patients; moreover, the payment amount is directly proportional to the volume of patients referred.

34.   Accordingly, the payments to the physician practices are in fact illegal remuneration in exchange for patient referrals.

35.   The above scheme is in blatant violation of the Anti-Kickback Statute, and the kickback-tainted claims Defendants submitted to Medicare and other federal and private insurance plans violate the FCA and the CIFPA, respectively.

---

[1] Although Modern Nuclear suggests that the physicians provide "direct supervision," PET/CT scans are subject to only a "general supervision" requirement, meaning that the physician's presence is not required during the performance of the procedure. *See* 42 C.F.R. § 410.32(b)(3). Under Modern Nuclear's arrangements, the ordering physician provides the required supervision – meaning they are in their office and available for consultation during the procedure, but not actually present in or near the van or trailer.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

# VI.
## THE LEGAL FRAMEWORK

**A.    The Medicare Program**

Program Overview and Provider Enrollment

36.    In 1965 Congress enacted Title XVIII of the Social Security Act, known as the Medicare program, to pay for certain healthcare services provided to certain segments of the population. Entitlement to Medicare is based on age, disability, or affliction with end-stage renal disease. *See* 42 U.S.C. §§ 1395 *et seq*.

37.    The federal Department of Health and Human Services, through CMS, administers the Medicare program.

38.    Part B of the Medicare program authorizes payment for medical services in an outpatient setting. *See* 42 U.S.C. § 1395k(a)(2)(B).

39.    CMS enters into agreements with healthcare providers to participate in the Medicare program. Individuals or entities who are participating providers in Medicare may seek reimbursement from CMS for services rendered to patients who are Medicare beneficiaries.

40.    To enroll as an authorized participant in Medicare, providers are required to make the following certification:

> I agree to abide by the Medicare laws, regulations and program instructions that apply to me…. The Medicare laws, regulations, and program instructions are available through the Medicare Administrative Contractor. I understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations and program instructions (***including, but not limited to, the Federal Anti-Kickback Statute***, 42 U.S.C. section 1320a-7b(b) […]).

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

Medicare Enrollment Application: Clinics/Group Practices and Other Suppliers, CMS-855B, at 30 (emphasis added).[2]

41.     Compliance with applicable Medicare program rules and regulations is material to the government's decision to pay and its subsequent payment of claims. In order to be reimbursable by Medicare, services must be medically necessary. *See* 42 U.S.C. § 1395y(a)(1)(A); 42 C.F.R. § 411.15(k)(1).

The Medicare Claims Process

42.     In order to receive reimbursement from Medicare, providers must submit a claim form. *See* Form CMS-1500.[3] That claim form requires the provider to make the following certification:

> In submitting this claim for payment from federal funds, I certify that: 1) the information on this form is true, accurate and complete ... 3) I have provided or will provide sufficient information required to allow the government to make an informed eligibility and payment decision; 4) this claim ... complies with all applicable Medicare and/or Medicaid laws, regulations, and program instructions for payment ***including but not limited to the Federal anti-kickback statute*** ....

*Id.*, at 2 (emphasis added).

43.     A provider may also submit the electronic equivalent of this claim form, which includes a substantially similar certification.

44.     CMS guidance as to electronic claims submission is found in Chapter 24 of the Medicare Claims Processing Manual, CMS Publication No. 100-04 (the "Claims Manual").[4] Among other things, the guidance specifies the minimum content of the enrollment form that a local Medicare Administrative Contractor ("MAC") may use to sign

---

[2] *Available at* https://www.cms.gov/Medicare/CMS-Forms/CMS-Forms/Downloads/cms855i.pdf (last accessed Aug. 17, 2023).

[3] *Available at* https://www.cms.gov/Medicare/CMS-Forms/CMS-Forms/downloads/cms1500.pdf (last accessed Aug. 17, 2023).

[4] *Available at* https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/downloads/clm104c24.pdf (last accessed Aug. 17, 2023).

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

up providers to submit claims electronically. Per the Claims Manual, such an enrollment form must contain, and the enrolling provider must acknowledge, at least the following statements:

> The provider agrees to the following provisions for submitting Medicare claims electronically to CMS or to CMS' A/B MACs or CEDI:
>
> * * *
>
> 7. That it will submit claims that are accurate, complete, and truthful;
>
> * * *
>
> 12. That it will acknowledge that all claims will be paid from Federal funds, that the submission of such claims is a claim for payment under the Medicare program, and that anyone who misrepresents or falsified or causes to be misrepresented or falsified any record or other information relating to that claim that is required pursuant to this agreement may, upon conviction, be subject to a fine and/or imprisonment under applicable Federal law; [and]
>
> * * *
>
> 14. That it will research and correct claim discrepancies[.]

Claims Manual, Chapter 24 § 30.2.

45. The submission of such a certification, if false, is a violation of the FCA. 31 U.S.C. § 3729(a).

46. Each such false certification is a separate violation of the FCA.

**B.    The False Claims Act ("FCA")**

47. The FCA, 31 U.S.C. §§ 3729 *et seq.*, establishes liability for any "person" (natural or corporate) who, *inter alia*:

  a. "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(l)(A);

  b. "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," *id.* § 3729(a)(l)(B); or

  c. "conspires to commit a violation of subparagraph (A) [or] (B), *id.* § 3729(a)(1)(C).

9

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

48. "Knowing" is defined by the FCA to include "deliberate ignorance of the truth" or "reckless disregard of the truth." Id. § 3729(b)(1).

49. The FCA defines "claim" to include any request for money that:

is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government—

(I)    provides or has provided any portion of the money or property requested or demanded; or

(II)   will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded....

Id. § 3729(b)(2)(A)(ii).

50. A claim upon a government health insurance program such as Medicare is a "claim" for purposes of the FCA.

51. "Obligation" is defined by the FCA to mean "an established duty ... arising from ... statute or regulation...." Id. § 3729(b)(3).

52. For each false claim or other FCA violation, the statute provides for the assessment of treble damages, plus a civil penalty.[5] Id. § 3729(a)(1).

53. The FCA also contains a *qui tam* mechanism and provides for payment of a percentage of the United States' recovery to the *qui tam* relator, as well as "an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs," in the event of a settlement or a successful trial. Id. § 3730(b), (d). "All [such] expenses, fees, and costs must be awarded against the defendant." Id., subsection (d).

---

[5] 31 U.S.C. § 3729(a)(1) provides for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, 28 U.S.C. § 2461. The minimum per-claim penalty is currently $13,508 and the maximum is $27,018. *See* 88 FR 5776, 5776-81 (Jan. 30, 2023).

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

## C.    The Anti-Kickback Statute

54.    As pertinent here, the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b), (the "AKS") prohibits, *inter alia*, the offering or paying of anything of value to induce the referral of business for which payment may be made by the Medicare program.

55.    A violation of the AKS is, in turn, a violation of the FCA. *See* 42 U.S.C. § 1320a-7b(g) ("[A] claim that includes items or services resulting from a violation of [the AKS] constitutes a false or fraudulent claim for purposes of [the FCA]").

56.    Kickbacks raise four major concerns for federal healthcare programs: (a) corruption of medical judgment, (b) overutilization, (c) increased costs to the federal healthcare programs and beneficiaries, and (d) unfair competition. Dep't of Health and Human Services, Office of Inspector General, "Special Fraud Alert: Laboratory Payments to Referring Physicians," June 25, 2016, at 2.

57.    Because it is paying for healthcare services free of these concerns, the "government does not get what it bargained for when a defendant is paid by CMS for services tainted by a kickback." *U.S. ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 314 (3d Cir. 2011). AKS compliance is thus a fundamental aspect of what the government purchases when it pays for medical care for federally insured beneficiaries.

58.    "[T]he Standard Medicaid Provider Application, the Standard Medicare Provider Agreement, and the Claim Form 1500 used for submission of Medicare, Medicaid, and TRICARE/CHAMPUS claims ... require compliance with 'applicable Federal or State laws,' a universe that plainly encompasses the AKS. ... Indeed, the conclusion that [AKS] compliance is a precondition of payment is rendered inescapable when the purpose of the [AKS] is considered within the context of these healthcare statutes." *U.S. ex rel. Wood v. Allergan, Inc.*, 246 F. Supp. 3d 772, 817 (S.D.N.Y. 2017), *rev'd on other grounds*, 899 F.3d 163 (2d Cir. 2018) (internal quotation marks omitted).

11

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

59.    "[T]he only reasonable inference is that AKS violations are *per se* material." *U.S. ex rel. Lutz v. Berkeley Heartlab, Inc.*, No. 9:14-230-RMG, 2017 U.S. Dist. LEXIS 198727, at *5-6 (D.S.C. Dec. 4, 2017).

60.    As alleged *supra*, Defendant violated the AKS through, *inter alia*, its numerous *quid pro quo* agreements with numerous physician practices, whereby Defendant received thousands of patient referrals in exchange for significant and excessive payments to the physician practices.

**D.    The California Insurance Fraud Prevention Act**

61.    The CIFPA prohibits the knowing employment of "runners, cappers, steerers, or other persons to procure clients or patients to perform or obtain services or benefits pursuant to [the Labor Code] or to procure clients or patients to perform or obtain services or benefits under a contract of insurance or that will be the basis for a claim against an insured individual or his or her insurer." Cal. Ins. Code § 1871.7(a).

62.    The CIFPA also establishes civil liability for violations of, *inter alia*, Cal. Pen. Code §§ 549-551, which criminalize various forms of insurance fraud. Cal. Ins. Code § 1871.7(b).

63.    Cal. Pen. Code § 550, in turn, establishes liability for "[k]nowingly mak[ing] or caus[ing] to be made any false or fraudulent claim for payment of a health care benefit." *Id.*, subsection (a)(6).

64.    The CIFPA thus provides a cause of action for "fraudulent conduct, including kickbacks, used to procure patients or obtain services or benefits covered by insurance." *United States v. Crescendo Bioscience, Inc.*, No. 16-cv-02043-TSH, 2020 U.S. Dist. LEXIS 90940, at *19 (N.D. Cal. May 23, 2020).

65.    For each violation of the CIFPA, California assesses a civil penalty of not less than $5,000 and not more than $10,000, plus an assessment of not more than three times the amount of each claim. *See* Cal. Ins. Code § 1871.7(b).

12

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

66. The CIFPA also provides for payment of a percentage of California's recovery to an interested person who brings suit on behalf of California. *See id.* § 1871.7(g).

## COUNT I
## FALSE CLAIMS ACT:
## PRESENTATION OF FALSE CLAIMS
### (*on behalf of the United States*)

67. Relators repeat and reallege ¶¶ 21-35 as if fully set forth herein.

68. As described in those paragraphs, Defendants knowingly presented or caused to be presented false claims for payment to Medicare and other federal health insurance programs. These claims were false because they were procured through violations of the AKS.

69. The submission of these false claims caused the United States to pay out monies that it would not have paid if it had known of the falsity of these claims.

70. Accordingly, Defendants' knowing presentations of false or fraudulent claims for payment to the United States were violations of 31 U.S.C. § 3729(a)(1)(A).

71. Each presentation of a false or fraudulent claim to the United States is a separate violation of the FCA.

72. By reason of the false or fraudulent claims that Defendants knowingly presented, the United States has been damaged in an amount to be proven at trial.

## COUNT II
## FALSE CLAIMS ACT:
## MAKING OR USING FALSE RECORD OR STATEMENT
### (*on behalf of the United States*)

73. Relators repeat and reallege ¶¶ 21-35 as if fully set forth herein.

74. As described in those paragraphs, Defendants knowingly made, used, or caused to be made or used, false records or statements when they caused claims for payment to be presented to the United States, including Defendants' false certifications of

13

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

compliance with all applicable laws, regulations and program instructions in the Medicare enrollment application and/or CMS-1500 claim forms (or electronic equivalent).

75. The making and use of these false records or statements caused the United States to pay out monies that it would not have paid if it had known of the falsity of Defendants' records and statements.

76. Accordingly, Defendants' knowing making and use of false records or statements material to false or fraudulent claims for payment submitted to the United States were violations of 31 U.S.C. § 3729(a)(1)(B).

77. Each such making or use of a false record or statement is a separate violation of the FCA.

78. By reason of the false or fraudulent records or statements that Defendants knowingly made or used, the United States has been damaged in an amount to be proven at trial.

**COUNT III**
**FALSE CLAIMS ACT:**
**CONSPIRACY**
***(on behalf of the United States)***

79. Relators repeat and reallege ¶¶ 21-35 as if fully set forth herein.

80. As alleged in those paragraphs, Defendants conspired to submit claims to Medicare and other federal health insurance programs that were false and fraudulent because they were procured and/or furnished in violation of the AKS.

81. Defendants also conspired to make or use false records and statements material to those false claims.

82. Accordingly, Defendants conspired to submit false claims in violation of 31 U.S.C. § 3729(a)(1)(C).

83. As a result of this conspiracy, the United States has been damaged in an amount to be proven at trial.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

## COUNT IV
## CALIFORNIA INSURANCE FRAUD PREVENTION ACT: UNLAWFUL KICKBACKS
### (*on behalf of the State of California*)

84. Relators repeat and reallege ¶¶ 21-35 as if fully set forth herein.

85. As described in those paragraphs, Defendants knowingly presented or caused to be presented false claims for payment to private insurers in California for services for which patients were referred to Defendant Modern Nuclear, Inc. in exchange for illegal kickbacks or other remuneration, in violation of Cal. Ins. Code § 1871.7(a).

86. Defendants also knowingly made or caused to be made false or fraudulent claims for payment to private insurers in California in violation of Cal. Pen. Code §§ 550(a)(5) and (6).

87. Each violation of Cal. Pen. Code § 550 is in turn a violation of Cal. Ins. Code § 1871.7(b).

88. As a result of Defendants' fraud, California has been damaged in an amount to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Relators respectfully request that this Court enter judgment in their favor and that of the United States and the State of California and against Defendants, granting the following on all Counts:

A. an award to the United States for treble its damages, a statutory penalty for each violation of the FCA, and for its costs pursuant to 31 U.S.C. § 3729(a)(3);

B. an award to the State of California for treble its damages, a statutory penalty for each violation of the CIFPA, and for its costs pursuant to Cal. Ins. Code § 1871.7(a).

C. an award to Relators in the maximum amount permitted under 31 U.S.C. § 3730(d) and Cal. Ins. Code § 1871.7(g), and for the reasonable attorneys' fees and costs they incurred in prosecuting this action;

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

D.     awards to the United States, the State of California, and Relators for pre- and post-judgment interest at the rates permitted by law; and

E.     such other and further relief as this Court may deem to be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Relator demands trial by jury on all questions of fact raised by the Complaint.

Dated: September 1, 2023          Respectfully submitted,

*/s/ Imad. Y. Elias*
Imad Y. Elias
**LAW OFFICE OF MANN & ELIAS**
3333 Michelson, Suite 300
Irvine, CA 92612
(949) 655-4235 (office)
(323) 857-9525 (fax)
*imad @mannelias.com*

Chunsoo "Terence" Park
Jason T. Brown
Patrick S. Almonrode
    (*pro hac vice* applications forthcoming)
**BROWN, LLC**
111 Town Square Place, Suite 400
Jersey City, NJ 07310
(877) 561-0000 (office)
*terence.park@jtblawgroup.com*
*jtb@jtblawgroup.com*
*patalmonrode@jtblawgroup.com*

*Counsel for Relator*

16

This package is made from post-consumer waste. Please recycle again.



PS00001000014

EP14F July 2022
OD: 12 1/2 x 9 1/2



USPS.COM/PICKUP

TRACKED ■ INSU

**FLAT RATE ENV**
ONE RATE ■ ANY WEIGHT

■ Expected delivery date specifie
■ Domestic shipments include $1
■ USPS Tracking® service include
■ Limited international insurance.
■ When used internationally, a cu

*Insurance does not cover certain items. F
Domestic Mail Manual at http://pe.usps.cc
** See International Mail Manual at http://i

**UNITED STATES**
**POSTAL SE**

**PRIORITY®**

US POSTAGE & FEES PAID          062S0009867927
PRIORITY MAIL                              FROM 07310
ZONE 8 FLAT-RATE ENVELOPE
ComBasPrice

P

stamps
endicia
09/01/2023

## USPS PRIORITY MAIL ®

BROWN, LLC
111 TOWN SQUARE PL STE 400
JERSEY CITY NJ 07310-2766

C013

SHIP
TO:
US DISTRICT COURT
Central District of California
411 W 4TH ST STE 1-053
SANTA ANA CA 92701-4516

### USPS TRACKING #



9405 5118 9956 2059 2277 28

